UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ESTEBAN MARTINEZ NOGUEZ,

                                    Petitioner,

           v.                                                            9:26-CV-0030
                                                                         (MAD)
TOM BROPHY, Field Office Director of Enforcement and
Removal Operations, Field Office, Immigration and Customs
Enforcement; KRISTI NOEM, Secretary of the United States
Department of Homeland Security; UNITED STATES
DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI,
United States Attorney General; EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,

                                    Respondents.

_____

APPEARANCES:                                              OF COUNSEL:

THE ROMERO FIRM, LLC                                      ANDREW C. RUSSELL, ESQ.
Counsel for Petitioner
400 Market Street
4th Floor
Newark, New Jersey 07105

UNITED STATES ATTORNEY
Adam J. Katz, Esq.
Assistant United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261

MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

**I.    INTRODUCTION**

      Petitioner Esteban Martinez Noguez seeks federal habeas corpus relief, by and

through counsel, pursuant to 28 U.S.C. § 2241.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-2,

Supporting Exhibits.[1]  Respondents oppose the Petition.  Dkt. No. 11, Response; Dkt. No. 11-1, Scott Ortman Declaration ("Ortman Decl."); Dkt. No. 11-2, Exhibits ("Ex.").  Petitioner did not file a reply.

Petitioner, a Mexican citizen, has been living in the United States since approximately 1997.  Pet. at 7, 12 (¶ 5), 14 (¶ 19); Ortman Decl. ¶ 4; Ex. at 6-7, 9.[2]  Petitioner was not detained upon entry into the United States, does not have any criminal convictions, and does not have a removal order.  Pet. at 7, 12 (¶¶ 5-6); Ex. at 7.  Petitioner is married, with three adult sons, and has been living in a rented apartment in Brooklyn, New York since 2015.  Dkt. No. 1-2 at 4-10 (marriage license and related documents); Dkt. No. 1-2 at 12-18, 20-27, 29-31, 34-37 (identifying information, education and professional certifications, and letter of support from Petitioner's three sons); Dkt. No. 1-2 at 97-119 (rental agreements).  Petitioner has provided letters of support from family, friends, and his religious leader attesting to his character and contributions to his family and community over the last decade.  Dkt. No. 1-2 at 121-134.

Petitioner was apprehended by federal authorities on October 14, 2025, at which time the Department of Homeland Security took him into custody and placed him in removal proceedings.  Pet. at 12 (¶ 6); Ortman Decl. ¶¶ 5-6; Ex. at 1-4 (Notice to Appear before an immigration judge, scheduled for November 11, 2025); Ex. at 5 (Warrant of Arrest of Alien dated October 14, 2025); Ex. at 6-8 (Form 1-213, dated October 15, 2024); Ex. at 9-12 (amended Notice to Appeal before an immigration judge, scheduled for January 6, 2026).

---

[1]  For the sake of clarity, citations to Petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[2]  While respondent indicates that Petitioner "entered the United States without inspection on an unknown date," Ortman Decl. ¶ 4, supporting exhibits provided to the Court by Respondent represent that Petitioner arrived in or around Massena, New York in March of 2000, Ex. at 1, 5.

Petitioner submitted two requests for custody redetermination, otherwise known as bond hearings, with the immigration court.  Ortman Decl. ¶ 7.  The first request for a bond hearing was withdrawn by Petitioner's counsel on December 15, 2025.  Ex. at 13-14.  The second request for a bond hearing was denied.  Ex. at 15-16.  Specifically, the immigration judge held that Petitioner's reliance on *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873 (C.D. Cal), was misplaced as the Central District of California decision was "not an injunction and d[id] not purport to vacate, stay or enjoin [the Board of Immigration Appeals' decision] *Matter of Yajure Hurtado*." *Id.*[3]  Consequently, the immigration judge concluded that Petitioner's continued detention was mandatory, pursuant to § 1225(b)(2)(A); therefore, the immigration judge did not have jurisdiction to grant Petitioner a bond hearing.  Ex. at 16.

Petitioner presently remains in custody, at the Broome County Correctional Facility, because of those immigration charges.  Pet. at 2.

## II.    PETITION

Petitioner argues that he is entitled to federal habeas relief because the immigration judge wrongly denied his request for release from custody, incorrectly relying on the reasoning in *Matter of Yajure Hurtado* instead of following the rationale in *Maldonado Bautista*.  Pet. at 7, 12-13 (¶¶ 5-10), 15-16 (¶¶ 26-30), 17-18 (immigration order denying Petitioner's request for custody redetermination).  Petitioner requests that this Court order his immediate release from immigration custody or, alternatively, that the immigration court conduct a bond hearing.  Pet. at 8, 13 (¶¶ 10-11), 16.

---

[3]  The *Matter of Yajure Hurtado* decision concluded that "aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings."  29 I. & N. Dec. 216, 220 (BIA 2025).

Respondent opposes the Petition, arguing that (1) Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2)(A) and is not entitled to a bond hearing, Dkt. No. 11 at 2, 20-21; and (2) the *Maldonado Bautista* declaratory judgment does not entitle Petitioner to the relief he seeks, Dkt. No. 11-1 at 2, 22-25.[4]

## III.   DISCUSSION

### A.   Legal Standard

An individual seeking habeas relief must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  "A non-citizen, immigration-detainee petitioner seeking to challenge his detention pending removal may bring a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241."  *Dzhabrailov v. Decker*, No. 7:20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (citing cases).  The petitioner "bears the burden of proving that he is being held contrary to law; and . . . the petitioner must satisfy his burden of proof by a preponderance of the evidence."  *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citations omitted).

### B.   Statutory Authority for Petitioner's Detainment

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A).  Conversely, Petitioner argues the controlling authority should be 8 U.S.C. § 1226(a).  This is not the first time the undersigned has considered this argument.  *See Martins v. Akshar*, No. 9:26-CV-0095 (MAD), Dkt. No. 16, Memorandum-Decision and Order ("February Order").

---

[4] Given the conclusions in this Decision and Order, the Court will not further address the parties' arguments related to the *Maldonado Bautista* decision.

While Respondents in the *Martins* case only mentioned this conflict tangentially,[5] the undersigned engaged in a detailed discussion considering whether § 1225(b)(2) or § 1226(a) properly authorized the detention of noncitizens who have lived in the United States for an extended period of time. *Martins,* February Order, at 6-8.  The undersigned posited that a "Petitioner [who] ha[d] lived in the United States for several years . . . [wa]s not presently 'seeking admission' within the meaning of the statute, [therefore] § 1225(b)(2) d[id] not govern his re-detainment." *Martins,* February Order, at 7-8.  The undersigned declined, however, to decide whether § 1225(b)(1)(B)(ii) or § 1226 applied to the petitioner because it was clear that the petitioner's due process rights had been violated and he was entitled to a bond hearing.  *Id.* at 10-16.

This case poses a slightly different factual circumstance from *Martins* because, in Martins, the petitioner was released into the country on parole and, here, Petitioner has never interacted with immigration officials by formally applying for admission, being arrested or detained at the border, interviewing with officials, etc.  While the exact date of Petitioner's entry into the United States remains unclear, representations and documents from both sides lead the undersigned to conclude that the Petitioner has lived in the United States for well over twenty years.  Pet. at 7, 12 (¶ 5); Ortman Decl. ¶ 4; Ex. at 1, 5.  Respondents emphatically argue that "Congress mandates the detention of [noncitizens] . . . who enter the United States without inspection and are placed in removal proceedings . . . regardless of the [noncitizen]'s duration of unlawful presence or the distance from the border at which he is apprehended."  Dkt. No. 11 at 19.

---

[5]  In that case, Respondents claimed that 8 U.S.C. § 1225(b)(1)(B)(ii) provided the authority to detain Petitioner and briefly noted that Petitioner's argument was "based on the mistaken belief that the Government [wa]s detaining him under 8 U.S.C. § 1225(b)(2) following the recent decision in *Matter of Yajure Hurtado* and a change in ICE policy."  *Martins,* Dkt. No. 13 at 8.

As stated by a court in the Southern District of New York, "the administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts."  *Barco Mercado v. Francis*, No. 25-cv-6582, 2025 WL 3295903, *4 (S.D.N.Y. Nov. 26, 2025) (citing appendices containing references to the 362 cases)).  "The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."  *Id.*; *see also Ruiz v. Trump*, No. 2:26-CV-00012, 2026 WL 323254, at *4 (D. Vt. Feb. 6, 2026).

The other Northern District Judges who have been asked to evaluate the Department of Homeland Security's blanket policy to detain everyone who has ever crossed the border, regardless of any of the case's other details, have also reached the same conclusion.  *See Gaspar v. Akshar*, No. 9:26-CV-118 (BKS), Dkt. Entry Dated 02/05/26 (Oral Ruling and Docket Order & Dkt. No. 10, Order; Perez v. Akshar, No. 9-26-CV-0120 (ECC), Dkt. Entry Dated 02/06/26 (Oral Ruling and Docket Order) & Dkt. No. 16, Order.

Petitioner "clearly is not presenting himself at the border and was not recently apprehended just after entering this country."  *Minarcaja Concha v. Lyons*, No. 2:25-CV-6695, 2026 WL 215417, at *13 (E.D.N.Y. Jan. 28, 2026).  Therefore, for the same reasons outlined in *Martins*, and the aforementioned cases, the Court disagrees with Respondents and concludes that 28 U.S.C. § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention.  *Martins,* February Order, at 6-8.[6]

---

[6] Three days after the undersigned issued its decision in *Martins*, the Fifth Circuit issued a decision with a two-judge majority and one dissenting judge, wherein the court held that noncitizens were "applicants for admission" to the United States who were "seeking

### C.    Due Process

Having concluded that Petitioner's detention is discretionary, and not mandatory, the next question is whether the detention violates Due Process.  Petitioner argues that it does, thus his case warrants immediate release or, in the alternative, a bond hearing.  Pet. at 8. Respondent claims that, in the event a bond hearing were required, Petitioner would first need to exhaust his remedies pursuant to that process before seeking further release from this Court.  Dkt. No. 11 at 21.

"The Fifth Amendment entitles all persons to due process of law . . . [including] noncitizens, whether their presence here is lawful, unlawful, temporary or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing U.S. Const. amend. V & *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

> In the Second Circuit, the *Mathews v. Eldridge*, 424 U.S. 319 . . . (1976), balancing test applies when determining the adequacy of process in the context of civil immigration confinement. . . . The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025) (internal quotation marks and citations omitted).

Applying the *Mathews* test here, Petitioner's Due Process rights were violated.  "First, Petitioner has a cognizable private interest in being freed from unlawful detention."  *Crespo*

---

admission," and thus were subject to INA's mandatory detention provision.  *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026).  The Fifth Circuit countered the Southern District of New York's collection of 350 cases, by footnoting two "notable" cases that ruled in favor of the respondents from district courts in Texas.  *See id.* at 3 n.4.

*Tacuri v. Genalo*, No. 1:25-CV-6896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) (citing

*inter alia Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty

interests [is] the interest in being free from physical detention by one's own government.").

Second, there is a severe risk of erroneous deprivation given that Petitioner was

subjected to the wrong statutory authority and incorrect procedures which created and

continued his detention.  As one court in the Eastern District of New York explained,

> [t]wo statutory sections govern immigration detention: 8 U.S.C. §
> 1225 . . . and 8 U.S.C. § 1226 . . . . Under Section 1225, detention
> of a noncitizen is mandatory and release is permitted only "for
> urgent humanitarian reasons or significant public benefit." 8 U.S.C.
> § 1182(d)(5)(A).  Section 1226, however, provides that detention is
> discretionary and, if detained, a noncitizen may then request a
> bond hearing before an immigration judge, 8 C.F.R. §§
> 1236.1(c)(8), (d)(1), where the noncitizen "may secure his release
> if he can convince the officer or immigration judge that he poses
> no flight risk and no danger to the community." *Nielsen v. Preap*,
> 586 U.S. 392, 397–98 . . . (2019).

*O.F.B. v. Maldonado*, No. 1:25-CV-6336, 2025 WL 3277677, at *3 (E.D.N.Y. Nov. 25, 2025)

(internal citations omitted).  Respondents' rationale to justify detaining Petitioner has been

invalidated by other courts in the Second Circuit.

> Specifically, since the Immigration Judge found [P]etitioner was
> being detained under 1225(b)(2)(A), he did not conduct an
> individualized assessment because under 1225, detention is
> mandatory.  The risk of erroneously depriving [P]etitioner of his
> liberty is further emphasized by the fact that [R]espondents have
> not argued that [P]etitioner is a flight risk or a danger to his
> community[.]

*Crespo Tacuri,* 2026 WL 35569, at *7; *see also Mohd v. Noem*, No. 2:26-CV-680, 2026 WL

363525, at *5 (E.D.N.Y. Feb. 9, 2026) (granting petition and ordering the petitioner's release

where "there is absolutely nothing in the record showing that Mr. Mohd presents a flight risk

or danger to the community"); *Sidqui v. Almodovar*, No. 25-CV-9349, 2026 WL 251929, at *15

(S.D.N.Y. Jan. 30, 2026) (granting habeas petition because "the Government does not argue that Petitioner is a flight risk or danger to the community").

It is undisputed that Petitioner has lived in the United States for over two decades with no interactions with law enforcement.  Importantly, the Government does not even attempt to argue that Petitioner is a risk of flight or danger to the community.  Dkt. No. 11.  Petitioner also provided evidence of his strong family, religious, and community ties, mitigating any such potential argument.

Finally, "the government's interest in continued detention is slight insofar as [P]etitioner was detained without an individualized custody determination that evaluated the dangerousness and flight risk or any articulated change in circumstances."  *Crespo Tacuri,* 2026 WL 35569, at *7.

In sum, "[a]s other courts have concluded in factually similar cases, Petitioner's detention without a bond hearing amounts to a due process violation."  *Crespo Tacuri,* 2026 WL 35569, at *7 (citing cases).

### D.    Remedy

The appropriate remedy in this case is a conditional release pending an expedited bond hearing.  Numerous courts have concluded that ordering a bond hearing under similar circumstances is woefully inadequate.  For example, courts have stated as follows:

> [A] bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation . . . .
>
> [Petitioner]'s detention was unlawful from its inception because ICE detained h[im] under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a).
>
> In this situation a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine

9

> opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out.

*Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065, 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) (citing, *inter alia*, *Lopez Benitez*, 795 F. Supp. 3d at 497 (concluding that "Respondents' failure to conduct any kind of individualized assessment *before* detaining him [resulted in a constitutional violation whereupon] any post-deprivation review by an immigration judgment would be inadequate.")) (spacing added); *see also Minarcaja Concha v. Lyons*, No. 2:25-CV-6695, 2026 WL 215417, at *19 (E.D.N.Y. Jan. 28, 2026); *Lazo v. Noem*, No. 2:25-CV-6639, 2026 WL 303430, at *16 (E.D.N.Y. Feb. 4, 2026).

Indeed, "[h]abeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion)). "The typical remedy for such detention is, of course, release." *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *see also Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019) ("As Petitioner's arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore Plaintiff is to immediately release him and enjoin the Government from further similar transgressions" against him).

Courts across the country, however, have concluded that an expedited bond hearing is the appropriate remedy where an undocumented individual has been detained without a bond hearing. *See, e.g., Chan v. Bondi*, No. 3:25-CV-298, 2026 WL 388605, at *3 (W.D. Pa. Feb. 12, 2026); *Lleshi v. Noem* No. 1:26-CV-00032, 2026 WL 381839, at *6 (D.N.M. Feb. 11, 2026); *Baygut v. Rhoney*, No. 26-CV-6069, 2026 WL 366679, at *4 (W.D.N.Y. Feb. 10, 2026); Martinez v. Warden, No. 3:25-CV-1057, 2026 WL 322742, at *5 (N.D. Ind. Feb. 6, 2026).

The Court will attempt to strike a balance between these decisions and order that Petitioner be conditionally released.  *See Kashranov v. Jamison*, No. 2:25-CV-05555, 2025 WL 3188399, at *8 (E.D. Pa. Nov. 14, 2025) ("[A] habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'") (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)); *Perez v. Bondi*, No. 8:26-CV-47, 2026 WL 329171, at *1 (D. Neb. Feb. 6, 2026).

If a bond hearing is held within the time ordered, the Court requires the Government to bear the burden at the bond hearing because "'shifting the burden of proof to the [g]overnment to justify continued detention promotes the [g]overnment's interest—one [the Second Circuit] believe[s] to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose.'" *Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032, at *15 (W.D.N.Y. Nov. 4, 2025) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020)) .  "Thus, . . . 'requiring [the government] to justify [the petitioner]'s detention by clear and convincing evidence" would not "substantially undermine[ the government's] legitimate interests or entail[ ] an undue administrative burden.'" *Id.* (quoting *Velasco Lopez*, 978 F.3d at 854-55).

## IV.   CONCLUSION

For these reasons, it is

**ORDERED** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and it is further

**ORDERED** that Petitioner shall be **RELEASED** by **February 17, 2026**, unless a bond hearing is held and, consistent with the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976),

11

Respondents prove by clear and convincing evidence that Petitioner is a risk of flight or danger to the community by that date; and it is further

**ORDERED** that Respondents shall provide the Court with a status update regarding the bond hearing or, if no bond hearing was held, advise the Court regarding Petitioner's release no later than **February 19, 2026**; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in Petitioner's favor and close this case; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  February 13, 2026
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

12